John A. Vogt (State Bar No. 198677)
javogt@jonesday.com
Ryan D. Ball (State Bar No. 321772)
rball@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
(T) 949-851-3939
(F) 949-553-7539

Attorneys for Defendant
Experian Information Solutions, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER HOPGOOD, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., a corporation,<br><br>Defendant. | Case No. 8:22-cv-01400-JWH-ADS<br><br>Assigned to: John W. Holcomb<br><br>**MEMORANDUM OF LAW IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>Date:    December 9, 2022<br>Time:    9:00 a.m.<br>Place:   Courtroom 9D |

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ............................................................................................... 3

LEGAL ARGUMENT ...................................................................................................... 5

    I.     THE COURT SHOULD COMPEL THIS MATTER TO ARBITRATION .......... 5

          A.     A Valid Agreement to Arbitrate Exists ........................................................ 6

          B.     EIS May Directly Enforce The Arbitration Agreement ............................. 6

          C.     At A Minimum, However, EIS Is A Third-Party Beneficiary .................... 9

                 1.     Whether EIS Is A Third-Party Beneficiary Has Been Delegated To An Arbitrator To Decide ............................................ 9

                 2.     Even If This Court Were To Decide The Question, EIS Plainly Is A Third-Party Beneficiary ............................................ 11

          D.     An Arbitrator Is To Decide The Arbitrability Of Plaintiffs' Claims ........ 13

    II.    THE ACTION MUST BE STAYED PENDING ARBITRATION ...................... 14

CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

Page

**CASES**

*Adams v. AT&T Mobility, LLC*,
    524 F. App'x 322 (9th Cir. 2013) ...................................................................9

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ........................................................................................5

*AT&T Tech, Inc. v. Communications Workers of America*,
    475 U.S. 643 (1986) .................................................................................6, 10

*Banh v. Am. Honda Motor Co.*,
    Case No. 2:19-cv-05984-RGK-AS, 2020 WL 5035095 (C.D. Cal. July 28, 2020) ..............................................................................................................13

*Bayco Prod., Inc. v. ProTorch Co., Inc.*,
    No. 4:19-cv-00648-ALM, 2020 WL 2574626 (E.D. Tex. May 21, 2020) ......9

*Belyea v. GreenSky, Inc.*,
    Case No. 20-cv-01693-JSC, 2021 WL 1338552 (N.D. Cal. Apr. 9, 2021) .....8, 9

*Blanton v. Domino's Pizza Franchising LLC*,
    962 F.3d 842 (6th Cir. 2020) .........................................................................11

*Carrillo v. ROICOM USA, LLC*,
    486 F. Supp. 3d 1052 (W.D. Tex. 2020) .........................................................9

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ..................................................................6, 14

*Cione v. Foresters Equity Servs., Inc.*,
    58 Cal. App. 4th 625 (1997) .........................................................................12

*Clemons v. Midland Credit Management, Inc.*,
    1:18-cv-16883-NLH-AMD, 2019 WL 3336421 (D.N.J. July 25, 2019) ........8

*Coulter v Experian Information Solutions, Inc.*,
    2021 WL 735726 (E.D. Pa. Feb. 25, 2021) ................................................2, 14

*Crawford v. Beachbody, LLC*,
    No. 14-cv-1583-GPC (KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ...6

*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*,
    756 F.3d 1098 (8th Cir. 2014) ............................................................................... 11

*Fikham v. BMW of North America LLC*,
    No. 19-03963 VAP, 2019 WL 6721626 (C.D. Cal. Oct. 15, 2019) ......................... 13

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) .............................................................................................. 10

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..................................................................... 6

*George v. Rushmore Service Center, LLC*,
    18-cv-13698, 2020 WL 2319293 (D.N.J. May 11, 2020) ........................................ 8

*Goonewardene v. ADP, LLC*,
    6 Cal. 5th 817 (2019) ............................................................................................ 12

*Graf v. Match.com, LLC*,
    No. CV 15-3911 PA, 2015 WL 4263957 (C.D. Cal. July 10, 2015) ........................ 6

*Greater N.Y. Mut. Ins. Co. v. Rankin*,
    298 A.D.2d 263 (N.Y. App. Div. 2002) ................................................................ 13

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000) .................................................................................................. 6

*Green v. Serv. Corp. Int'l*,
    333 F. App'x 9 (5th Cir. 2009) ................................................................................ 9

*Hacohen v. BMW of North America, LLC*,
    Case No. CV 21-0464-MWF, 2021 WL 4352364 (C.D. Cal. July 23, 2021) ....... 12, 13, 14

*Harris v. Midland Credit Management, Inc.*,
    Civil Action No. 15-4453 (SDW)(SCM), 2016 WL 475349 (D. N.J. Feb. 8,
    2016) ....................................................................................................................... 9

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
    139 S.Ct. 524 (2019) ............................................................................................. 14

*Herrera v. Verra Mobility Corp.*,
    No. CV-20-00515-PHX-DWL, 2020 WL 6781269 (D. Az. Nov. 18, 2020) ......... 13

*Lacayo v. BMW of N. Am. LLC*,
    2020 WL 3971307 (N.D. Cal. July 13, 2020) ....................................................... 12

*Lee v. Ticketmaster, LLC*,
   2019 WL 9096442 (N.D. Cal. April 1, 2019), aff'd 817 Fed. Appx. 393 (9th
   Cir. 2020) ...................................................................................................................6

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ....................................................................................................14

*Ridgeway v. Nabors Completion & Prod. Servs. Co.*,
   725 F. App'x 472 (9th Cir. 2018) ...............................................................................9

*Rizvi v. BMW of North America LLC*,
   Case No. 5:20-cv-00229-EJD, 2020 WL 2992859 (N.D. Cal. June 4, 2020)..........13

*Roberson v. Experian Information Solutions, Inc.*,
   SA-21-CV-00316-JKP, 2022 WL 62270 (W.D. Tex. Jan. 5, 2022) ......................2, 8

*Rollins v. United Healthcare Services, Inc.*,
   No. 2:21-cv-01023-TLN-DMC, 2022 WL 705618 (E.D. Cal. Mar. 9, 2022) .........14

*Ronay v. Family Ltd. P'ship v. Tweed*,
   157 Cal. App. 4th 830 (2013) ...................................................................................12

*Sanzone-Ortiz v. Aetna Health of California, Inc.*,
   No. 15-cv-03334-WHO, 2015 WL 9303993 (N.D. Cal. Dec. 22, 2015)...................9

*Sauer v. Experian Information Solutions, Inc.*,
   Case No. 8:21-cv-00963-JLS-DFM (C.D. Cal. May 12, 2022) (Staton, J.) Dkt.
   No. 49—Plaintiffs'...................................................................................... 2, 10, 12

*Shearson/Am. Express v. McMahon*,
   482 U.S. 220 (1987) ...................................................................................................6

*Stephens v. Experian Information Solutions, Inc.*,
   ---F. Supp. 3d---, 2022 WL 2716177 (D. Haw. July 13, 2022) ........................ passim

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011) .......................................................................7

*Wang v. Bear, Stearns & Co.*,
   2009 WL 10675213 (C.D. Cal. Nov. 12, 2009).........................................................9

*Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*,
   CV 19-10337-DSF, 2020 WL 2730926 (C.D. Cal. Mar. 13, 2020).........................11

# INTRODUCTION

This is a putative class action arising out of an alleged data breach. The plaintiff, Walter Hopgood, claims that information in his "Experian CreditWorks Basic consumer account" was "repeatedly accessed and stolen by an unauthorized cybercriminal resulting in his identity being stolen." He alleges that defendant Experian Information Solutions, Inc. ("EIS") is responsible for this unlawful activity. He claims EIS's conduct violated: (1) the Fair Credit Reporting Act ("FCRA"), and (2) California's Unfair Competition Law ("UCL"). He also pleads a claim for unjust enrichment. He seeks to represent a nationwide class of similarly-situated individuals. Although the claims lack merit, EIS elects to adjudicate them in arbitration.[1]

As he pleads in the complaint, Hopgood is a member of CreditWorks—an online credit monitoring product that is provided by EIS's affiliate, ConsumerInfo.com, Inc. (which does business as Experian Consumer Services ("ECS")). His CreditWorks membership predates the filing of this lawsuit. When Hopgood enrolled in CreditWorks, he agreed to the Terms of Use governing that service. That contract contains an arbitration agreement. The Arbitration Agreement defines "ECS" to include its "affiliates." During the entire time that Hopgood has been enrolled in CreditWorks, EIS has been an affiliate of ECS. The Arbitration Agreement provides that Hopgood and "ECS"—which, again, is defined under the contract to include EIS—agreed to arbitrate "all disputes and claims

---

[1] None of the claims pleaded in the complaint can withstand a pleadings challenge. A data breach cannot give rise to a violation of the FCRA. *See*, *e.g.*, *In re Experian Data Breach Litigation*, Case No. SACV 15-1592 AG (DFMx), 2016 WL 7973595, at *2 (C.D. Cal. Dec. 29, 2016) (dismissing the identical FCRA claims that Hopgood pleads here with prejudice). Hopgood, a resident of Oregon, lacks standing to pursue a claim under the UCL. *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917-18 (C.D. Cal. 2011) ("Plaintiffs' claims under the UCL and CLRA are dismissed because these California statutes cannot provide relief for non-California residents who cannot allege a sufficient connection to California."). Finally, "California does not recognize a separate cause of action for unjust enrichment." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132–33 (N.D. Cal. 2020) (collecting California and federal cases). In the event that this matter is not compelled to arbitration, EIS will bring a motion for judgment on the pleadings.

between us" that arise out of, or relate to, his CreditWorks membership on a non-class basis. As a party to the Arbitration Agreement contained therein (by virtue of how ECS is defined), EIS may directly enforce the arbitration provision. At a minimum, however, EIS is a third-party beneficiary of the contract.

While the Arbitration Agreement that Hopgood agreed to delegates "all issues" to an arbitrator—including all questions regarding arbitrability, enforceability and scope, *see Sauer v. Experian Information Solutions, Inc.*, Case No. 8:21-cv-00963-JLS-DFM (C.D. Cal. May 12, 2022) (Staton, J.) Dkt. No. 49—Hopgood's claims fall within the scope of the arbitration clause, as they are expressly grounded upon information allegedly stolen from his CreditWorks account. In *Coulter v. Experian*, the court granted EIS's motion to compel arbitration, upholding the enforceability of the arbitration clause in the CreditWorks Terms of Use. *See Coulter v Experian Information Solutions, Inc.*, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021). The court in *Roberson v. Experian* did the same. *See Roberson v. Experian Information Solutions, Inc.*, SA-21-CV-00316-JKP, 2022 WL 62270 (W.D. Tex. Jan. 5, 2022) ("Plaintiff agreed to arbitrate its claims against ECS, as well as its parent entities, subsidiaries, and affiliates. It is undisputed that ECS is an affiliate of Experian."). So did the court in *Stephens v. Experian*. *See See Stephens v. Experian Information Solutions, Inc.*, ---F. Supp. 3d---, 2022 WL 2716177, at *1 (D. Haw. July 13, 2022) ("Because Stephens's FRCA claims are covered by a valid arbitration agreement, this court grants the motion and dismisses this case."). This Court should now rule in the same manner.

Thus, under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, EIS respectfully moves for an order compelling this matter to arbitration on an individual (non-class) basis, as required under Hopgood's written agreement, and staying this action until arbitration has been completed.

## STATEMENT OF FACTS

On April 5, 2020, Hopgood enrolled in CreditWorks. *See* accompanying Declaration of David Williams ("Williams Decl."), ¶ 3; *see also* ECF No. 1 ("Cmplt."), ¶ 12 (alleging Hopgood is a CreditWorks member). In order to successfully enroll, Hopgood had to complete a single webform. *Id*. and Ex. 1. The form required Hopgood to enter his personal information—*i.e.*, his name, address, phone number, and e-mail address. *Id*. After he entered his personal information, Hopgood had to click the "Create Your Account" button on the webform in order to enroll. *Id*. Immediately below the boxes to enter his e-mail address and password, was the following disclosure: "By clicking "Create Your Account": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." *Id*.

The phrase "Terms of Use Agreement" in the disclosure was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. *Id*., ¶ 4. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. *Id*. Thus, before clicking the "Create Your Account" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "Terms of Use Agreement." *Id*. When a consumer clicked on the "Terms of Use Agreement" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. *Id*. Immediately below the disclosure was a large purple button that reads: "Create Your Account." The webform, the disclosure, and the "Create Your Account" button appeared on a single webpage. *Id*.

After entering his information, Hopgood clicked the "Create Your Account" button, thereby accepting and agreeing to the Terms of Use Agreement. *Id*., ¶ 5. Hopgood would not have been able to successfully enroll in CreditWorks unless he clicked that button. *Id*. A true and correct copy of the Terms of Use that was in

- 3 -

effect when Hopgood enrolled in CreditWorks is attached as Exhibit 2 to the Williams Declaration. After enrolling, Hopgood has continuously used his service, including after the current version of the Terms of Use came into effect. *Id*., ¶ 8. A true and correct copy of the current (operative) version of the Terms of Use Agreement is attached as Exhibit 6 to the Williams Declaration.[2]

Every version of the Terms of Use Agreement in effect during Hopgood's enrollment has a section entitled, "Amendments," which advised him that he would be bound by the then-current Terms of Use each time he "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement: "Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement." *Id*., ¶ 9. While all versions of the Terms of Use allowed Hopgood to opt-out of amendments to the arbitration clause, at no time did he ever reject any changes that were made. *Id*.

Every version of the Terms of Use that was in effect during Hopgood's enrollment in CreditWorks contains an Arbitration Agreement, which requires him to litigate, among other things, all claims against "ECS" that "relate to" or "arise out of" his membership in arbitration on a non-class basis. *Id*., ¶ 10. The Arbitration Agreement defines "ECS" to include its "parent entities, subsidiaries, [and] affiliates . . . ." *Id*. and Ex. 6. So does the "Overview and Acceptance of Terms" section of the contract. *Id*. During the entire time that Hopgood has been enrolled in CreditWorks, EIS has been an affiliate of ECS. *Id*. By including EIS (an affiliate) within the definition of "ECS," the Terms of Use make EIS a party to the contract, as well as a party to the Arbitration Agreement contained within that contract. *Id*. Moreover, by including EIS within the "Overview and Acceptance of Terms"

---

[2] On May 16, 2022, Plaintiff's account was terminated due to fraud concerns. *Id*., ¶ 6. He nonetheless re-enrolled in CreditWorks approximately two weeks later (on May 28, 2022) and, in order to do so, re-accepted the Terms of Use. *Id*., ¶¶ 6-8 and Exs. 3-5.

section, as well as within the definition of ECS in the Arbitration Agreement, the parties intended for EIS to benefit under the contract. *Id*. Additionally, the Arbitration Agreement expressly incorporates the AAA rules. *Id*.

At all times relevant to this action, EIS contributed to the services that CreditWorks subscribers receive by providing regular access to how information appears in their EIS credit files, including changes to their credit file information. *Id*., ¶ 11. Further, all CreditWorks subscribers are required to provide written authorization under the FCRA to obtain their credit report and/or credit score(s) on a recurring basis from EIS through CreditWorks. *Id*. The Terms of Use cover the provision of "Services," which is defined to include services to which EIS contributed as the provider of credit information—including CreditWorks and the provision of "credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein), the receipt of any alerts notifying [consumers] of changes to the information contained in [their] credit report(s)." *Id*.

# **LEGAL ARGUMENT**

## **I.     THE COURT SHOULD COMPEL THIS MATTER TO ARBITRATION**

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Pursuant to the FAA, arbitration must be compelled where, as here: (1) a valid agreement to arbitrate exists; and (2) the arbitration agreement encompasses the claims at issue. *See Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126,

1130 (9th Cir. 2000). An arbitration agreement governed by the FAA is presumed to be valid and enforceable. *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226 (1987). There is a presumption in favor of arbitrability, *AT&T Tech,, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986), and the party seeking to evade arbitration bears the burden of showing that the arbitration provision is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

### A. A Valid Agreement to Arbitrate Exists

Courts within this Circuit routinely enforce internet agreements where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website. *See*, *e.g.*, *Lee v. Ticketmaster, LLC*, 2019 WL 9096442, at *1 (N.D. Cal. April 1, 2019), aff'd 817 Fed. Appx. 393 (9th Cir. 2020) ("Ticketmaster provided notice of the terms of use adjacent to the 'Place Order' button, included a hyperlink to the terms in a contrasting color, and informed the user that 'continuing past this page' (*i.e.*, placing an order) would indicate assent to the terms.").

As a matter of law, Hopgood agreed to the Terms of Use Agreement because: (1) he had clear notice of the Terms of Use at the time he enrolled, (2) he was admonished that, by clicking an adjacent button, he was agreeing to be bound by the Terms of Use; and (3) he clicked the button, thereby manifesting his assent to the Terms of Use. Numerous courts, under the same or analogous facts, have found that website users were bound by the Terms of Use. *See Coulter*, 2021 WL 735726; *Graf v. Match.com, LLC*, No. CV 15-3911 PA (MRWx), 2015 WL 4263957 (C.D. Cal. July 10, 2015); *Crawford v. Beachbody, LLC*, No. 14-cv-1583-GPC (KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911 (N.D. Cal. 2011).

### B. EIS May Directly Enforce The Arbitration Agreement

In the traditional world of paper contracts, it is usually easy to tell who the

1  parties to an agreement are—you just look at the signature lines. With online
2  consumer contracting, however, the matter is sometimes more complicated. Online
3  entities often work closely with a number of affiliated corporate entities to provide
4  customers with a single integrated service, and there is often no signature line to
5  consult in the Terms of Use that result from these interactions. Nonetheless, the
6  hornbook principles of contract law remain: the parties to a contract are those who
7  agreed to be bound by its obligations. *See, e.g.*, Williston on Contracts § 1.1
8  (defining a "contract" as "a promise or set of promises for breach of which the law
9  gives a remedy") (4th ed. May 2021 Update); *id.* § 1.2 (defining a "promise" as a
10 commitment between a promisor and a promisee); Restatement (Second) of
11 Contracts §§ 1, 2 (same).

12        Under these principles, EIS's status as a party to the Arbitration Agreement
13 is beyond dispute. To start, the "Overview and Acceptance of Terms" section under
14 the current version of the Terms of Use defines ECS to include its affiliates, such as
15 EIS. Williams Decl., Ex. 6. The Arbitration Agreement contained within the Terms
16 of Use does the same. *Id*. Indeed, the Arbitration Agreement includes a
17 straightforward, bilateral promise: "ECS and you agree to arbitrate all disputes and
18 claims between us arising out of or relating to this Agreement to the maximum
19 extent permitted by law[.]" *Id*. And all versions of the Arbitration Agreement
20 clearly identify the promisors and promisees—that is, the parties—with respect to
21 that promise: "For purposes of this arbitration provision, references to 'ECS,'
22 'you,' and 'us' shall include our respective parent entities, subsidiaries,
23 affiliates. . . ." *Id*. As an affiliate of ECS, EIS is swept within the definitions of
24 "ECS" and "us" under the Arbitration Agreement, and thus qualifies as a promisee
25 (and promisor) entitled to enforce the Arbitration Agreement that Plaintiffs entered.

26        There is nothing surprising about this result. Courts routinely have held that
27 materially identical language creates a binding contract enforceable by the parties
28 identified as making promises with each other. For example, in *Roberson v.*

*Experian*—a recent case which involved the same Terms of Use at issue here—the court held that plaintiff "agreed to arbitrate its claims against ECS, as well as its parent entities, subsidiaries, and affiliates." *Roberson v. Experian Information Solutions, Inc.*, SA-21-CV-00316-JKP, 2022 WL 62270, at *4 (W.D. Tex. Jan. 5, 2022). The court further noted "[i]t is undisputed that ECS is an affiliate of Experian." *Id*. Consequently, the court granted EIS's motion to compel arbitration.

Courts throughout the country are in accord. In *George v. Rushmore Service Center, LLC*, 18-cv-13698, 2020 WL 2319293, at *2 (D.N.J. May 11, 2020), the court, in granting the motion to compel arbitration, explained that, under the contract, "arbitration [wa]s mandatory for claims by 'you or us,' which explicitly includes FPB and 'the employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns of you and us.'" The court in *Clemons v. Midland Credit Management, Inc.*, 1:18-cv-16883-NLH-AMD, 2019 WL 3336421, at *3-4 (D.N.J. July 25, 2019), on similar facts, held the same. The court *Belyea v. GreenSky, Inc.*, Case No. 20-cv-01693-JSC, 2021 WL 1338552 (N.D. Cal. Apr. 9, 2021), likewise granted the motion to compel arbitration because the contract specified that "Claims . . . that arise between you and us will be resolved through binding arbitration," and the contract defined "us" to include "any corporate parent, wholly or majority owned subsidiaries, affiliates, . . . and any third party providing any product, service or benefit in connection with the Agreement." 2021 WL 1388552, at *2–3. The court rejected the plaintiff's argument that GreenSky, the loan servicer, could not enforce the agreement as a party—holding that because GreenSky "f[e]ll within the Arbitration Provision's definition of 'us,'" it qualified as a "party" that could "move to compel arbitration." *Id.* at *3; *see also Sanzone-Ortiz v. Aetna Health of California, Inc.*, No. 15-cv-03334-WHO, 2015 WL 9303993, at *6 (N.D. Cal. Dec. 22, 2015) (dismissing plaintiff's argument that the defendant was not a party to the arbitration agreement because the plaintiff's "limited reading of the agreement ignore[d] that the arbitration provision applies

- 8 -

to . . . *affiliates* as well.") *Id*. at *6.[3]

In short, by disclosing to users they are agreeing to arbitrate with ECS's affiliates, and requiring affirmative action by Hopgood to assent to those terms, Hopgood is bound by the Terms of Use Agreement and its obligation that he arbitrate his claims against EIS. *Roberson*, 2022 WL 62270.

### C. At A Minimum, However, EIS Is A Third-Party Beneficiary

Even if the Court were to conclude that EIS cannot directly enforce the Arbitration Agreement as a party thereto, EIS may nonetheless compel arbitration as a third-party beneficiary of the contract.

#### 1. Whether EIS Is A Third-Party Beneficiary Has Been Delegated To An Arbitrator To Decide

If there is any dispute over whether EIS qualifies as a third-party beneficiary, that issue is to be resolved by an arbitrator. By default, the parties to an arbitration agreement are presumed to have left such questions of arbitrability to the courts. *See, e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). They may alter this background rule, however, by agreeing to send questions of arbitrability to an arbitrator along with the rest of the underlying dispute. Where the contract "clearly and unmistakably" does so, a court must enforce this distinct agreement by compelling disputes about arbitrability into arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

Under these principles, courts regularly have sent questions about a third

---

[3] Numerous other decisions on similar facts are in accord. *See, e.g.*, *Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 725 F. App'x 472, 474 (9th Cir. 2018); *Adams v. AT&T Mobility, LLC*, 524 F. App'x 322, 324 (9th Cir. 2013); *Green v. Serv. Corp. Int'l*, 333 F. App'x 9 (5th Cir. 2009); *Wang v. Bear, Stearns & Co.*, 2009 WL 10675213, at *1 (C.D. Cal. Nov. 12, 2009); *Carrillo v. ROICOM USA, LLC*, 486 F. Supp. 3d 1052, 1062 (W.D. Tex. 2020); *Bayco Prod., Inc. v. ProTorch Co., Inc.*, No. 4:19-cv-00648-ALM, 2020 WL 2574626 (E.D. Tex. May 21, 2020); *Harris v. Midland Credit Management, Inc.*, Civil Action No. 15-4453 (SDW)(SCM), 2016 WL 475349, at *2 (D. N.J. Feb. 8, 2016).

party's ability to enforce an arbitration agreement against a signatory to an arbitrator for resolution in the first instance. For example, in *Solis v. Experian*, Judge Carney granted EIS's motion to compel arbitration under the CreditWorks Terms of Use, finding that "[t]he Terms of Use are similarly clear that the arbitrator decides 'scope' issues—*i.e.*, which claims are subject to the agreement." *Solis v. Experian Information Solutions, Inc.*, Case 8:22-cv-00102-CJC-KES (C.D. Cal. Sept. 21, 2022) (ECF No. 61). Judge Staton reached the same conclusion, holding that "the dispute over whether Experian is a third-party beneficiary should go to the arbitrator." *Sauer v. Experian Information Solutions, Inc.*, Case No. 8:21-cv-00963-JLS-DFM (C.D. Cal. May 12, 2022) (ECF No. 49 ("Plaintiff agreed that 'the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement.'"); *see also Stephens*, 2022 WL 2716177, at *6 ("Applying *Brennan* [*v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)], this court concludes that the parties [to the CreditWorks contract] have clearly and unmistakably delegated the issue of arbitrability to the arbitrator.").

Similarly, in *Portland General Electric Co. v. Liberty Mutual Insurance Co.*, PGE had a guaranty contract with Abengoa that included an arbitration clause and provided that, once arbitration began, either side could implead third parties into the arbitration. *See* 862 F.3d 981, 983–84 (9th Cir. 2017). Abengoa initiated an arbitration and impleaded the sureties who would be liable to PGE in the event PGE's contractor had defaulted (as it claimed and Abengoa disputed). *See id.* at 984. PGE filed suit against the sureties in federal court, complaining that it had never agreed to arbitrate with them. *See id.* Although the district court agreed with PGE, the Ninth Circuit did not, finding that, by incorporating rules similar to those found in the AAA, PGE had "delegated to the arbitrators" questions such as "whether PGE ha[d] . . . agreed to arbitrate its dispute against the [s]ureties." *Id.* at 985; *see also Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 843–44,

852 (6th Cir. 2020) (same); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (sending the question of "[w]hether a particular arbitration provision may be used to compel arbitration between a signatory and a non-signatory" to the arbitrator because the arbitration agreement incorporated the AAA Rules); *Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*, CV 19-10337-DSF (JPRx), 2020 WL 2730926, at *2–3 (C.D. Cal. Mar. 13, 2020) (same).

Under this precedent, an arbitrator must resolve any doubts about EIS's ability to compel arbitration as a third-party beneficiary. Not only does the Arbitration Agreement incorporate the AAA rules, *see* Williams Decl., Ex. 6, but the delegation clause broadly provides: "**All issues** are for the arbitrator to decide, including the scope and enforceability of this arbitration provision[.]" *Id.* (emphasis added). Under these facts, the Ninth Circuit has held that there was clear and unmistakably evidence that the parties agreed to arbitrate arbitrability. *See Portland General*, 862 F.3d at 985; *Brennan*, 796 F.3d at 1130. Because the delegation clause in the Arbitration Agreement sends gateway questions of arbitrability to the arbitrator, any question about EIS's ability to enforce as a third party belong to an arbitrator too. *Stephens*, 2022 WL 2716177, at *6; *Sauer*, Case No. 8:21-cv-00963-JLS-DFM (C.D. Cal. May 12, 2022), Dkt. No. 49.

### 2. Even If This Court Were To Decide The Question, EIS Plainly Is A Third-Party Beneficiary

Under California law, a third party may assert rights under a contract when (1) "the third party would in fact benefit from the contract," (2) "a motivating purpose of the contract was to provide a benefit to the third party," and (3) "permitting [the] third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019); *see also*, *e.g.*, *Hacohen v. BMW of North America,*

1  *LLC*, Case No. CV 21-0464-MWF (JEMx), 2021 WL 4352364, at *4 (C.D. Cal. July 23, 2021) (applying this test to compel arbitration with a third-party beneficiary).

Applying this and equivalent standards, courts have held over and over again that a party named in the arbitration agreement, either directly or as a member of a specified class, can enforce as a third-party beneficiary. *See, e.g.*, *Ronay v. Family Ltd. P'ship v. Tweed*, 157 Cal. App. 4th 830, 838–39 (2013) (allowing a non-party to enforce as a third-party beneficiary because the arbitration agreement "expressly require[ed] arbitration of claims against . . . agents and registered representatives" like the non-party); *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 636–40 (1997) (allowing a non-party to enforce as a third-party beneficiary because the contract between the plaintiff and the regulatory agency compelled him to arbitrate claims against his "firm"); *Lacayo v. BMW of N. Am. LLC*, 2020 WL 3971307, at *1 (N.D. Cal. July 13, 2020) (compelling Lacayo to arbitrate his claims against BMW of North America because the arbitration clause in his agreement with BMW Financial Services "explicitly applie[d] to affiliates" like BMW of North America); *Herrera v. Verra Mobility Corp.*, No. CV-20-00515-PHX-DWL, 2020 WL 6781269, at *6 (D. Az. Nov. 18, 2020) (allowing ATS Processing and ATS Consolidated to enforce an arbitration agreement because the contract "defined 'us' as encompassing vendors and third-party service providers" like them); *Banh v. Am. Honda Motor Co.*, Case No. 2:19-cv-05984-RGK-AS, 2020 WL 5035095, at *5 (C.D. Cal. July 28, 2020) (allowing Honda to "invoke the right to the benefits of the arbitration agreements" in question because one of the parties (Acura) was "defined to include Honda"); *Greater N.Y. Mut. Ins. Co. v. Rankin*, 298 A.D.2d 263, 263 (N.Y. App. Div. 2002) (third parties may enforce arbitration agreements where "the right of the nonsignatory is expressly provided for in the agreement"); *Fikham v. BMW of North America LLC*, No. 19-03963 VAP, 2019 WL 6721626,

at *2 (C.D. Cal. Oct. 15, 2019) (same); *Rizvi v. BMW of North America LLC*, Case No. 5:20-cv-00229-EJD, 2020 WL 2992859, at *2–3 (N.D. Cal. June 4, 2020) (same).

Under this authority, EIS—which, again, is an "affiliate" defined as part of "ECS" for purposes of the Arbitration Agreement—qualifies as a third-party beneficiary entitled to enforce the Arbitration Agreement. First, EIS clearly is a party that would "benefit from the contract"—including by arbitrating claims against it pursuant to the contract's express provisions guaranteeing that outcome. *Hacohen*, 2021 WL 4352364, at *5 (explaining that an arbitration agreement allowing enforcement by affiliates meets this standard).

Second, by naming EIS as a party that may enforce the Arbitration Agreement, the parties clearly demonstrated their "motivating purpose . . . to provide a benefit to" EIS. *Id*. at *4–5. Why else would the parties specify that "affiliates" fall within ECS for purposes of the Arbitration Agreement?

Third, allowing EIS to enforce the Arbitration Agreement here is plainly "consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Id*. EIS is "not some random third party." *Id*. at *5. Instead, EIS plays a significant role in the provision of Services under the Terms of Use, and is mentioned by name over 30 times in the contract. *Id*., Ex. 3.

For these reasons, EIS is a third-party beneficiary, and may compel arbitration.

### D.   An Arbitrator Is To Decide The Arbitrability Of Plaintiffs' Claims

If there is any question as to whether Hopgood's claims fall within the scope of the Arbitration Agreement, that issue also is to be decided by an arbitrator: "All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision[.]" Williams Decl., Ex. 6. Where, as here, the parties have clearly and unmistakably agreed that an arbitrator should decide the validity and applicability of an arbitration provision, the FAA "'leaves no place for the exercise

of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron*, 207 F.3d at 1130 (citation omitted); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (same); *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 527–30 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."); *Coulter*, 2021 WL 735726 at *4 (finding that the Terms of Use's delegation clause "constitutes a 'clear and unmistakable' delegation clause under *Henry Schein* and delegates the exclusive authority to resolve 'all issues' to the arbitrator, including the 'scope and enforceability' of the Arbitration Provision"). In short, because the Terms of Use makes an unambiguous expression of intent to arbitrate arbitrability, any question over whether Plaintiffs' claims fall within the arbitration clause are for an arbitrator to decide. *Id*.; *Stephens*, 2022 WL 2716177, at *6; *see also Rollins v. United Healthcare Services, Inc.*, No. 2:21-cv-01023-TLN-DMC, 2022 WL 705618, at *2 (E.D. Cal. Mar. 9, 2022) ("Courts within this circuit have previously determined that identical delegation provisions have unmistakably delegated the issue of arbitrability to the arbitrator.") (citations omitted).

## II. THE ACTION MUST BE STAYED PENDING ARBITRATION

Section 3 of the FAA expressly provides that a district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Because Hopgood must be compelled to arbitrate his claims, the action should be stayed pending completion of arbitration.

## CONCLUSION

For the foregoing reasons, EIS respectfully requests that the Court grant this Motion, enter an order directing Hopgood to arbitrate his claims against EIS on an individual (non-class) basis, and stay this action pending the completion of arbitration.

Dated: October 26, 2022

JONES DAY

By: _____
John A. Vogt

Attorneys for Defendant
Experian Information Solutions, Inc.