JS-6

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER HOPGOOD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC, a corporation,<br><br>Defendant. | Case No. 8:22-cv-01400-JWH-ADS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [ECF No. 27]** |

Before the Court is the motion of Defendant Experian Information Solutions, Inc. to compel Plaintiff Walter Hopgood to submit all claims against Experian to arbitration and to stay the case until the arbitration proceeding has been completed.[1]  The Court concludes that this matter is appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition,[2] the Court orders that the Motion is **GRANTED**, for the reasons set forth herein.

## I. BACKGROUND

### A. Factual Allegations

Hopgood filed his Class Action Complaint in July 2022, alleging that security lapses by Experian allowed hackers to take control of his online Experian account and subsequently to take actions that negatively affected his credit report.[3]

Three months earlier, in April 2022, Hopgood received an email from Experian informing him that that the email address for his account had been changed.  Hopgood had not initiated that action.[4]  Hopgood was able to restore access to his Experian account after contacting customer support, but he was then notified that fraudulent credit card applications had unwittingly been made in his name.[5]

---

[1] Def.'s Mot. to Compel Arbitration (the "Motion") [ECF No. 27].
[2] The Court considered the document of record in this action, including the following papers:  (1) Compl. (the "Complaint") (including its attachments) [ECF No. 1]; (2) Motion (including its attachments); (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 28]; (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 29]; (5) Def.'s Notice of Suppl. Authority in Supp. of the Motion [ECF No. 32] (including its attachment); and (6) Pl.'s Notice of Suppl. Authority in Supp. of the Opposition ("Hopgood's Supplemental Authority") [ECF No. 33] (including its attachment).
[3] Complaint ¶ 108.
[4] *Id.* at ¶ 109.
[5] *Id.* at ¶ 116.

Hopgood disputed his credit report with Experian, and he notified Experian that his account was hacked and that he was a victim of identity theft.[6] Experian later informed Hopgood that the dispute had been resolved, and Experian removed the credit item from Hopgood's file.[7] But Hopgood continued to have issues relating to his credit report, and in May 2022 Hopgood received a letter from First National Bank of Omaha stating that his prequalification inquiry for a credit card with that institution could not be completed due to a credit report lock.[8] One day later, Hopgood received an email from Experian that his email address had again been updated, even though, again Hopgood did not initiate that action.[9]

Hopgood once again contacted Experian customer service, and Experian took additional actions to prevent access to Hopgood's account.[10] In the months that followed, Hopgood received dozens of letters from credit and banking companies regarding fraudulent applications that he claims were sent by hackers.[11] Hopgood subsequently discovered, after attempting to create a new Experian account, that the purported hackers had created a profile in his name with Experian and that the hackers used that profile to initiate fraudulent credit card applications.[12]

Hopgood then signed up for "CreditLock" on his Experian account and paid Experian a monthly fee to freeze his Experian credit file.[13] Despite the freeze on his account, Hopgood continued to receive fraudulent credit card

---

[6]   *Id.* at ¶ 119.
[7]   *Id.* at ¶ 122.
[8]   *Id.* at ¶ 123.
[9]   *Id.* at ¶ 124.
[10]  *Id.* at ¶ 129.
[11]  *Id.* at ¶ 131.
[12]  *Id.* at ¶¶ 134-36.
[13]  *Id.* at ¶ 137.

applications, and he has expended time and resources to undo the damage arising from the hacking of his Experian account.[14]

### B.  Procedural History

Hopgood filed his Class Action Complaint against Experian in July 2022, in which he asserts the following claims for relief, all on behalf of himself and the nationwide class:

- Willful Violations of the Fair Credit Reporting Act (the "FCRA");
- Negligent Violation of the FCRA;
- Violation of the California Unfair Competition Law; and
- Unjust Enrichment.

Experian filed the instant Motion in October 2022.

## II.  LEGAL STANDARD

Pursuant to the Federal Arbitration Act (the "FAA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  While the FAA reflects a "liberal federal policy favoring arbitration," *AT & T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  "Because the FAA mandates that 'district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed,' the FAA limits courts' involvement to 'determining:  (1) whether a valid agreement to arbitrate exists and, if it does,

---

[14]  *Id.* at ¶¶ 138 & 139.

(2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citations and emphasis omitted) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)).

In evaluating the validity of an arbitration agreement, federal courts "apply ordinary state-law principles that govern the formation of contracts," *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)), "while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration," *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).

## III.  ANALYSIS

Experian moves to compel arbitration based upon Hopgood's agreement to the Terms of Use ("TOU"), to which Hopgood agreed he created and used his Experian CreditWorks Basic customer account.[15]  CreditWorks is an online credit monitoring product that is provided by an Experian affiliate, ConsumerInfo.com, Inc., which does business as Experian Consumer Services ("ECS").[16]  The CreditWorks TOU contained an arbitration agreement, which defined ECS to include its affiliates and has included Experian during the entire time that Hopgood was enrolled in CreditWorks.[17]  The arbitration agreement required Hopgood to arbitrate "all disputes and claims between us" that arise out of, or relate to, his CreditWorks membership on a non-class basis.[18]

---

[15] Motion 1:1-11; Complaint ¶ 12.
[16] Motion 1:12-15.
[17] *Id.* at 1:18-2:4.
[18] *Id.*

Hopgood opposes Experian's motion by arguing that it was not Hopgood who agreed to the TOU's arbitration clause, but that it was the **hackers** who agreed to the TOU after Hopgood terminated his CreditWorks account.[19] Hopgood claims that hackers reactivated his CreditWorks accounts after he had reported it to Experian concerning his identity theft and that it was hackers who agreed to the TOU and arbitration agreement—not Hopgood.[20] As such, the gravamen of Hopgood's Opposition is that he is not a party to the arbitration agreement at issue, and this Court should therefore deny the Motion.

Although it is plausible that hackers had agreed to the TOU and arbitration agreement when Hopgood's CreditWorks account was surreptitiously reactivated by those alleged criminals, at no point in his Complaint or Opposition does Hopgood contend that he **never** agreed to the CreditWorks TOU. It is uncontested that Hopgood first created his CreditWorks account on April 5, 2020, and he agreed to the TOU and arbitration agreement with he enrolled in Experian's service.[21] Hopgood also does not contest that **every** version of CreditWorks's TOU contained the following statement:

> Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement.[22]

Even though all versions of the TOU permitted users to opt out of amendments to the arbitration clause, Hopgood never opted out of these portions of the TOU.[23] And while Hopgood may dispute whether he was still

---

[19]  Opposition 1:12-20.
[20]  *Id.* at 8:5-26.
[21]  Motion 3:2-12; *see* Decl. of David Williams in Supp. of the Motion (the "Williams Declaration") [ECF No. 27-2].
[22]  Williams Declaration ¶ 9.
[23]  *Id.*

bound by the TOU after Experian froze his account, the plain language of the TOU's arbitration clause expressly delegates this issue to the arbitrator: "All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision[.]"[24]

In support of his position, Hopgood filed a Notice of Supplemental Authority, alerting the Court to the Ninth Circuit case *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023).  The *Jackson* court affirmed the denial of a motion to compel arbitration because the plaintiff's claims fell outside of the scope of the arbitration provision.  *See id.* at 1102.  Hopgood similarly contends that his claims are not covered by the arbitration provision.[25]  The Court is not convinced.  Instead, the Court agrees with Experian's assertion that "Hopgood's claims fall within the scope of the arbitration clause, as they are expressly grounded upon information allegedly stolen from his CreditWorks account."[26]  Therefore, the Court concludes that the *Jackson* case is inapplicable to the instant facts.

Here, because the parties had agreed through the TOU to delegate the question of arbitration to the arbitrator, it is unnecessary for this Court to weigh factual issues beyond Hopgood's initial agreement to arbitrate.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."); *see also Sauer v. Experian Info. Sols., Inc.*, 2022 WL 2163016, at *3 (C.D. Cal. May 12, 2022) (interpreting the same CreditWorks TOU and finding that the plaintiff agreed that the arbitrator had the exclusive authority to resolve the scope and

---

[24] *Id.*, Ex. 2.
[25] *See generally* Hopgood's Supplemental Authority.
[26] Motion 2:9-11.

enforceability of the arbitration agreement); *Cimillo v. Experian Info. Sols., Inc.*, 2023 WL 2473403, at *8 (S.D.N.Y. Mar. 13, 2023).

Even if the Court were to conclude that Hopgood was released from CreditWorks TOU and arbitration clause following the termination of his account—and its re-activation by hackers—Hopgood's subsequent use of his account would have ratified that agreement. In his declaration attached to his Opposition, Hopgood testifies that after he "discovered that the hacker had, again, created an account in [his] name without [his] knowledge," Hopgood proceeded to update his "email address, physical address, and password" to "regain[] control of [his] account."[27] Hopgood then added additional account services, including "paying Experian $25 per month to 'freeze' [his] account for added security using 'CreditLock.'"[28]

Under California law, a party may ratify a contract through his conduct, even though he was not originally a signatory to the contract. "A contract which is voidable solely for want of due consent, may be ratified by a subsequent consent." Cal. Civ. Code § 1588. "Whether a party ratified a voidable contract depends primarily on the party's intention, as demonstrated by his or her declarations, acts, or conduct." *Changzhou AMEC E. Tools & Equip. Co. v. E. Tools & Equip., Inc*, 2012 WL 3106620, at *17 (C.D. Cal. July 30, 2012), *aff'd sub nom. Xuchu Dai v. E. Tools & Equip., Inc.*, 571 F. App'x 609 (9th Cir. 2014). Courts in California have applied the principle of contract ratification to arbitration contracts. *See Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 176 (2015) ("Evidence confirming the existence of an agreement to arbitrate, despite an unsigned agreement, can be based, for example, on conduct

---

[27] Decl. of Pl. Walter Hopgood in Supp. of the Opposition (the "Hopgood Declaration") [ECF No. 28-1] ¶¶ 16 & 17.

[28] *Id.* at ¶ 17.

-8-

from which one could imply either ratification or implied acceptance of such a provision.") (internal quotation omitted).

Even though Hopgood had previously terminated his CreditWorks account, upon discovering that alleged hackers had reactivated that account Hopgood re-asserted control and use of the account, including adding additional services through Experian to protect his identity. Accordingly, the Court concludes that Hopgood ratified the TOU and the arbitration agreement. For that reason, and because Hopgood had previously agreed to arbitration by accepting the TOU when he first created his CreditWorks account, the Court **GRANTS** Experian's Motion to compel arbitration.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Experian's instant Motion to compel arbitration is **GRANTED**. This action is **STAYED** pending the resolution of the arbitration.

2. Hopgood is **DIRECTED** to submit his claims to arbitration forthwith, pursuant to the terms of their respective Agreements.

3. The parties are **DIRECTED** to file a Joint Status Report no later than May 17, 2024, and every 90 days thereafter, advising the Court regarding the posture of the arbitration proceeding.

4. Any party may file a motion at any time to lift the stay, for good cause shown.

5. The Clerk is **DIRECTED** to close this case administratively.

**IT IS SO ORDERED.**

Dated: February 13, 2024

John W. Holcomb
UNITED STATES DISTRICT JUDGE